CHURCH STATE COUNCIL
Alan J. Reinach, Esq. SBN 196899
ajreinach@churchstate.org
Jonathon S. Cherne SBN 281548
Jcherne@churchstate.org
2686 Townsgate Road
Westlake Village, California 91361
Telephone: 805.413-7398
Fax: 805.497-3828

Attorneys for Plaintiff Eric Thrasher

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eric J. Thrasher, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>City and County of San Francisco, Department Human Resources<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. RELIGIOUS DISCRIMINATION -- (Gov. Code § 12940(a))<br>2. RETALIATION -- (Gov. Code §§ 12940(h) and (l)(4))<br>3. FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS -- (Gov. Code § 12940(l))<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. Plaintiff Eric Thrasher served Defendant City and County of San Francisco with dedication and excellence for over eight years as a Senior Administrative Analyst in the Department of Public Works. Despite his exemplary performance record and successful remote work since February 2020, Defendant terminated Thrasher's employment on April 1, 2022, after refusing to accommodate his sincerely held religious beliefs regarding the COVID-19 vaccination.
2. As a Christian Scientist, Thrasher's faith prohibits him from receiving vaccinations, as he relies on spiritual healing and prayer rather than medical interventions. Despite granting

Thrasher's religious exemption request and acknowledging the sincerity of his beliefs, Defendant refused to provide any reasonable accommodation that would allow him to continue his employment.

3. Defendant's discrimination was particularly egregious in light of what occurred next. Shortly after terminating Thrasher as an employee, Defendant rehired him in August 2022 as an independent contractor to perform the same duties remotely from Ohio. Thrasher continues working for Defendant in this capacity through the present day, reporting to the same supervisors, performing identical work, and participating in all staff meetings—but without employee protections, benefits, or FEHA coverage.

4. This contractor rehire proves that Defendant's claimed "undue hardship" was pretextual. If Thrasher can perform his duties remotely as a contractor without any safety concerns or operational difficulties, then no undue hardship existed to accommodate him as an employee. Defendant's true motive was to punish Thrasher for his religious beliefs and circumvent its legal obligations under FEHA.

**THE PARTIES**

5. Plaintiff Eric J. Thrasher is a citizen and resident of the State of Ohio, residing in Cincinnati, Ohio. Plaintiff is domiciled in Ohio and intends to remain there. At all relevant times, Plaintiff was a Christian Scientist whose sincerely held religious beliefs prohibited him from receiving vaccinations.

6. Defendant City and County of San Francisco, acting by and through its Department of Human Resources, is a municipal corporation and political subdivision of the State of California, duly organized and existing under the laws of the State of California, with its principal place of business in San Francisco, California. Defendant is a citizen of the State of California for purposes of diversity jurisdiction. Defendant is an "employer" within the meaning of FEHA, California Government Code § 12926(d), as it regularly employs five (5) or more persons.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and because a substantial part of the events giving rise to the claims occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff Eric J. Thrasher has exhausted his administrative remedies as required by the California Fair Employment and Housing Act. On January 31, 2025, Plaintiff filed a timely administrative complaint with the California Civil Rights Department ("CRD") against Defendant City and County of San Francisco, within three years of the date of his termination, well within the statute of limitations period.

10. On January 31, 2025, the CRD issued Plaintiff a Notice of Right to Sue (CRD Case No. CMT-00157). This Complaint is timely filed within one year of Plaintiff's receipt of the Right-to-Sue notice.

## DEMAND FOR A JURY TRIAL

10. Plaintiff demands a trial by jury on all issues so triable.

## GENERAL FACTS COMMON TO ALL CLAIMS

### THE DEDICATED PUBLIC SERVANT

11. Plaintiff Eric Thrasher is a Christian Scientist. Plaintiff’s sincerely held religious beliefs have guided his personal, moral, and professional decisions. Christian Science is a Christian denomination that emphasizes spiritual healing through prayer and reliance on God rather than medical interventions, including vaccinations.

12. Christian Science teaching holds that disease and illness are not material realities but mental errors that can be healed through prayer and spiritual understanding. As Thrasher explained

in his religious exemption request, Christian Scientists rely on spiritual means of healing based on an understanding of God's laws, rather than medical treatments.

13. Thrasher's religious beliefs include the conviction that his body is a temple of the Holy Spirit, and that turning to medical interventions, including vaccines, demonstrates a lack of faith in God's power to heal and protect. As Plaintiff stated in his exemption request, "Injecting into my blood the chemicals which comprise COVID-19 vaccines would dishonor God my maker, who has blessed me with my body, a temple in flesh of the Holy Spirit."

14. On March 31, 2014, Defendant City and County of San Francisco hired Plaintiff as a Senior Administrative Analyst (Classification 1823) in the Bureau of Street-Use and Mapping within the Department of Public Works ("DPW").

15. Thrasher's responsibilities included financial analysis, permit processing, project management, budget oversight, and supervision of administrative staff. He earned $56 per hour at the time of his termination, later adjusted to $61.4125 per hour in separation calculations.

16. Throughout his employment, Thrasher demonstrated exceptional dedication and competence. He had no history of disciplinary or performance issues.

## THE PANDEMIC AND REMOTE WORK SUCCESS

17. When the COVID-19 pandemic began in early 2020, Plaintiff transitioned to full-time remote work in February 2020 and continued to perform all his duties successfully from his San Francisco residence for over two years without any performance issues, complaints, or operational difficulties.

18. Plaintiff's work involved computer-based financial analysis, permit processing, and administrative tasks that could be performed effectively from any location with internet access.

19. From February 2020 through his termination in April 2022, Plaintiff worked remotely without any impact on DPW's operations or his ability to perform his job duties.

## THE CITY'S COVID-19 VACCINATION MANDATE

20. In August 2021, Defendant City and County of San Francisco issued a COVID-19 Vaccination Policy requiring all City employees to be fully vaccinated against COVID-19 as a condition of employment.

21. The policy established vaccination deadlines and ostensibly allowed employees to apply for religious or medical exemptions.

22. Employees who failed to comply with the vaccination mandate faced termination.

## THRASHER'S RELIGIOUS ACCOMMODATION REQUEST

23. In early September 2021, Plaintiff informed his immediate supervisor, Debra Lutske, of his intention to request a religious exemption from the vaccination requirement based on his Christian Science faith. Lutske was sympathetic and said she supported Plaintiff's right to choose.

24. Plaintiff also discussed his intentions with his Bureau Chief, Nicolas Huff. Huff was understanding and both agreed that accommodation should not be a problem since Plaintiff had been working remotely successfully throughout the pandemic.

25. In mid-September 2021, Plaintiff met with Interim Director of Public Works, Carla Short. Plaintiff explained his intentions and stated that while he had no fear of getting sick, he understood others were concerned about unvaccinated employees, and he was willing to continue working from home, wear a mask in the office, or locate to a back office away from other employees. Director Short acknowledged that she felt Plaintiff had reasonable grounds for exemption and thanked him for his willingness to accommodate by offering to isolate in a back office.

26. On or about September 16, 2021, Plaintiff timely submitted his religious accommodation request to Defendant's Office of the City Administrator Human Resources ("HR").

27. In his request, Plaintiff detailed his sincerely held Christian Science religious beliefs and explained that as a Christian Scientist, he relies on spiritual healing and prayer rather than

medical interventions, including vaccinations. He explained that Christian Science healing is based on an understanding of God's laws and the spiritual nature of man, and that turning to medicine would contradict his religious convictions.

28. Plaintiff requested the following reasonable accommodations:

a. Continue working remotely, as he had successfully done since February 2020;

b. Wear a mask when required to be in the office;

c. Work in a remote office location away from other employees; and/or

d. Submit to regular COVID-19 testing.

29. Each of these proposed accommodations was reasonable and would not have created any undue hardship for Defendant, particularly given that Plaintiff had already been working remotely successfully for over eighteen months.

**THE CITY'S CONTRADICTORY ACTIONS**

30. On October 31, 2021, Mary Woo, Senior Employee and Labor Relations Analyst in the Office of the City Administrator Human Resources, notified Plaintiff that his religious exemption request had been granted, acknowledging that his Christian Science beliefs were sincere and qualified for exemption under FEHA.

31. However, in the same communication, Defendant denied Plaintiff any reasonable accommodation to continue his employment, claiming that allowing him to work remotely or implement any other safety measures would create an "undue hardship."

32. Defendant's stated reasons for denying accommodation included claims that: (1) the accommodation would pose a direct threat to the health and safety of others and/or Plaintiff himself; (2) the accommodation would prevent Plaintiff from performing essential functions of his position; and (3) the accommodation would result in undue hardship for the City.

33. These stated reasons were pretextual and contradicted by Plaintiff's successful remote work performance for the preceding twenty months.

34. Plaintiff received a form entitled “Determination on COVID-19 exemption request,” which included check boxes with reasons for denial.

35. The form itself is inconsistent with FEHA, as “essential functions” and “direct threat” are not concepts that pertain to religious accommodation, only to disability, yet these were both check boxes as reasons to deny an exemption request.

36. Undue hardship is the statutory basis for determining that a reasonable religious accommodation cannot be provided.

37. By checking all three boxes, Defendant gives the distinct impression that it was merely going through the bureaucratic motions of issuing a denial without any consideration as to whether Plaintiff Thrasher could be accommodated.

38. Indeed, Defendant did not comply with its statutory obligation to “explore any available reasonable alternative” means of accommodating Thrasher – if it had done so, it would have realized that no further action was required, except to continue permitting him to work remotely as he had been doing.

39. Instead, Defendant applied a blanket policy: vaccination or termination, regardless of individual circumstances, job duties, or feasibility of accommodation.

**<u>THE CITYWIDE JOB SEARCHES</u>**

35. On October 31, 2021, Defendant referred Plaintiff to the Department of Human Resources Citywide Reasonable Accommodation Coordinator to conduct a 60-day Citywide job search for positions matching Plaintiff's experience, qualifications, salary range, and meeting his need for workplace accommodation.

36. On November 3, 2021, the City initiated a Citywide job search as an accommodation. The Citywide Reasonable Accommodation Coordinator, Jessica Comes, allegedly searched for positions with no direct public contact, or positions that could be performed while working remotely, i.e., positions similar to the one Plaintiff was already performing.

37. Plaintiff was permitted to continue working remotely in his 1823 Senior Administrative Analyst position during the 60-day job search.
38. On January 5, 2022, the Citywide Job Search concluded and DHR sent Plaintiff a closure letter explaining that the 60-day job search had expired without locating a suitable vacancy.
39. On or about December 28, 2021, Defendant initiated a second 60-day departmental job search as an accommodation. Plaintiff was permitted to continue working remotely until February 28, 2022.
40. On February 28, 2022, the departmental job search concluded without locating any suitable position. In sum, the Citywide job search and departmental job search were unsuccessful at locating a vacant position matching work limitations posed by Plaintiff's unvaccinated status and meeting his need for workplace accommodations.
41. These job searches were sham exercises because Defendant had adopted a blanket policy of denying all accommodations to employees with religious exemptions, regardless of department or position.
42. As DHR employee Svetlana Vaksberg explicitly told Plaintiff on November 24, 2021, "the City will not accommodate" religious exemptions.

**<u>THE BLOCKED TRANSFER TO OFFICE OF THE CITY ADMINISTRATOR</u>**

42. In September 2021, while Plaintiff's accommodation request was pending, Deputy Director Taraneh Moayed from the Office of the City Administrator ("OCA") contacted Plaintiff and asked if he would join her team.
43. The position offered to Thrasher would involve a promotion. .
44. During this initial call and in at least three additional conversations with Moayed and OCA Director Sailaja Kurella, Plaintiff explained his requirement for a vaccine exemption based on his Christian Science religious beliefs and informed them he would require a reasonable accommodation such as wearing a mask, weekly testing, or working remotely.

45. Both Moayed and Kurella stated they would work with HR and could not deny Plaintiff employment on the basis of his religious beliefs. On November 4, 2021, Kurella told Plaintiff: "We can't take into account vaccination status when making hiring decisions, and we're looking for the right candidate. We would make a decision absent that information and then determine if an accommodation can be made."

46. On November 18, 2021, Kurella offered Plaintiff a lateral transfer to OCA effective January 3, 2022, with a promotion to follow. Plaintiff accepted.

47. On November 22, 2021, Kingsley Yi, OCA's HR analyst, sent Plaintiff pre-employment forms and background screening paperwork for the transfer. Plaintiff completed and returned all paperwork.

48. The pre-employment paperwork included a document entitled "COVID-19 Vaccination Requirements" stating: "Any person exempted from vaccination as described below must: 1. Get tested for COVID-19 at least once a week using either a nucleic acid (including polymerase chain reaction {PCR}) or antigen test; and 2. At all times at the worksite in the high-risk setting wear a 'well-fitted' non-vented mask." This language indicated that a process for reasonable accommodation existed.

49. On November 23, 2021, Yi informed Plaintiff he had submitted paperwork to begin background checks and that OCA had targeted a transfer start date of January 10, 2022.

50. On November 24, 2021, Plaintiff called Svetlana Vaksberg, Director of the Employee and Labor Relations Division at DHR, to clarify whether departments or DHR made determinations on accommodation requests.

51. Plaintiff informed Vaksberg that OCA had offered him a lateral transfer with a promotion to follow, and that he had explained his vaccine exemption and accommodation requirements to OCA, who seemed to believe they could "work this out with HR."

52. Plaintiff told Vaksberg that he suspected departments could not make accommodation determinations unilaterally and that no departments would be allowed to accommodate

exemptions "because the City will not accommodate." Vaksberg agreed with this statement and even finished the sentence with Plaintiff, stating "the City will not accommodate."

53. On November 24, 2021, at 1:23 p.m., Kingsley Yi sent Plaintiff an email stating: "Let's hold off on any start dates... need to check in w parties next week re: navigating exemption process."

54. On December 6, 2021, at approximately 4:00 p.m., Vaksberg called Plaintiff via Microsoft Teams and confirmed that the City would not allow an accommodation and that Plaintiff's transfer to OCA would not be approved.

55. On December 7, 2021, at 10:50 a.m., Taraneh Moayed called Plaintiff and asked if he was aware of the City's position about the transfer. Moayed stated: "The City is taking a hard line, and is not allowing accommodations across the board, for all departments." She said it was unfortunate and that if Plaintiff changed his mind about getting vaccinated to let her know.

56. On February 23, 2022, Mary Woo sent Plaintiff a formal determination from OCA denying his religious accommodation request for the OCA position, stating that OCA was "unable to reasonably accommodate" him.

57. DHR's intervention to block Plaintiff's transfer to OCA, despite OCA's willingness to accommodate him, made clear that Defendant had adopted a blanket policy of refusing all accommodations for religious exemptions, regardless of individual circumstances or departmental willingness.

**<u>THE SCHEME TO REHIRE THRASHER AS A CONTRACTOR</u>**

57. In mid-December 2021, while Plaintiff's termination was pending, Bureau Chief Nicolas Huff informed Plaintiff that he had been trying to get HR to allow Plaintiff to continue telecommuting, but DHR was refusing.

58. Huff stated that he and upper management had been discussing the situation in detail, trying to find a way to keep Plaintiff. He then told Plaintiff that City Engineer Albert Ko had

suggested that the Bureau of Street-Use and Mapping hire Plaintiff as an independent contractor once the City separated him from employment.

59. Plaintiff suggested using DPP Tech, a Technology Marketplace vendor, and issuing a Technology Marketplace Request for Proposals ("RFP"). DPP Tech would then subcontract Plaintiff to do the work he had been doing as a City employee.

60. During a Wednesday staff meeting in mid-December 2021, Plaintiff explained to his team that he would be leaving for a short term, possibly in January, but would be returning. Plaintiff had discussed how to break this news to the team with his supervisor Debra Lutske, and they determined it would be best to remain vague and say he was taking a personal leave of absence.

61. In January 2022, as agreed with Bernie Tse and Nicolas Huff, Plaintiff created the RFP for a "Permitting & Inspections Software Implementation Project Manager" position, to include other duties related to financial operations within the bureau. The RFP was designed so that DPP Tech could select Plaintiff as the resource.

62. Tse and Huff reviewed the RFP draft and suggested changes. They had at least three reviews during January 2022.

63. In February 2022, with the help of his staff member Justin Liu, Plaintiff released the RFP into the Technology Marketplace.

64. Near the end of February 2022, Plaintiff informed his staff member Nahel Simon about the entire situation. Simon said he didn't want to see Plaintiff leave and hoped he would return in April as planned.

65. Plaintiff's supervisors—Nicolas Huff, Bernie Tse, Debra Lutske, Bruce Robertson, and Director Carla Short—were all aware of and approved the plan to rehire Plaintiff as a contractor to perform the identical duties he had performed as an employee.

**THRASHER'S TERMINATION**

67. On March 1, 2022, DHR's Virginia Prince advised Plaintiff that he was no longer authorized to work and would need to utilize accrued time off until he was separated.

68. On March 21, 2022, DHR issued Plaintiff a Notice of Intent for Separation, scheduling a "Final Interactive Process" meeting for March 28, 2022.

69. The Notice of Intent stated that Virginia Prince was recommending to Director Carla Short that Plaintiff be separated from his permanent civil service position based on his sincerely held religious beliefs that made him unable to meet vaccination requirements.

70. The Notice of Intent further stated that although the City had temporarily suspended and modified some essential job functions during the public health emergency, "these were not permanent changes to essential job functions," and claimed that "the ability to work on-site remains one of your essential job functions."

71. The Notice of Intent acknowledged that Plaintiff had worked remotely since the issuance of the Interim COVID-19 Telecommute Policy on March 25, 2020, and had participated in two separate 60-day job searches that failed to locate any suitable vacant position.

72. On March 24, 2022, Plaintiff submitted a written response detailing his belief that DHR, acting under Mayor Breed's direction, had deliberately prevented all City agencies and departments from providing reasonable accommodations to employees granted religious exemptions. Plaintiff stated: "Of nearly 1,000 requests for Religious exemptions- only 28 were granted exemptions, and none of those 28 have been reasonably accommodated."

73. On March 28, 2022, DHR conducted the Final Interactive Process meeting via Zoom with Plaintiff, his union representative Audrey Garza from IFPTE Local 21, and City officials including Virginia Prince and Mary Woo from DHR.

74. During the meeting, Plaintiff reiterated that he had successfully worked remotely for two years, that his accommodation requests were reasonable, and that Defendant's denial violated FEHA. Plaintiff asked Virginia Prince directly whether DHR knew how it had determined

that accommodating him by allowing him to wear a mask and submit to weekly testing, or allowing him to continue working remotely, would pose a direct threat to the health and safety of others. Prince responded that such decisions were "above her" and made by "DHR representatives and the city attorneys."

75. Plaintiff also asked Prince to verify whether the City was preventing departments from accommodating people who had been granted religious exemptions. Prince responded: "I can only speak to what I have seen directly working with people, people, others, and I have not been able to find positions able to be accommodated." When Plaintiff asked for clarification—"So that sounds like from your experience, no. Nobody who has been offered religious exemption has been accommodated"—Prince did not dispute this characterization.

76. The City refused to provide any accommodation and proceeded with Plaintiff's termination without offering any justification or exploring alternative means of accommodation.

77. On April 1, 2022, DPW Director Carla Short issued Plaintiff a Notice of Dismissal, effective at the close of business April 1, 2022 (April 2, 2022), terminating his employment due to his refusal to comply with the vaccination mandate. The separation was characterized as "non-punitive."

78. At the time of his termination, Plaintiff had over eight years of exemplary service with the City and no history of disciplinary issues.

79. As a result of his termination, Plaintiff and his wife (who was also terminated by the City for seeking a religious accommodation) were forced to leave California with their four-year-old daughter because they could no longer afford to live there.

**THE DISCRIMINATORY REHIRE AS INDEPENDENT CONTRACTOR**

80. In April 2022, while unemployed and living on savings, Plaintiff had discussions with Bernie Tse about the status of the software implementation project and with Justin Liu about proceeding with the contractor RFP. The City had not yet approved awarding the contract to DPP Tech. As Plaintiff stated at the time, "It has been VERY stressful!"

81. In or around August 2022, approximately four months after terminating Plaintiff as an employee, Defendant rehired Plaintiff as an independent contractor through DPP Tech. The City pays DPP Tech $160 per hour; DPP Tech pays Plaintiff $110 per hour.

82. As a contractor, Plaintiff performs the exact same duties he performed as a Senior Administrative Analyst: financial analysis, budget oversight, permit processing, project management, and administrative support for the Bureau of Street-Use and Mapping. In addition, Plaintiff now also serves as business lead for the new permitting and inspections software implementation project.

83. Plaintiff works remotely from Ohio and has done so continuously since his rehire in August 2022 through the present day.

84. As a contractor, Plaintiff participates in all weekly staff meetings and manager's meetings, completes weekly activity reports showing his daily tasks, reports to the same supervisors (Nicolas Huff, Bernie Tse, Debra Lutske), trains new City employees, creates performance plans for staff, and acts as de facto supervisor of the Financial Services Team.

85. Supervisor Debra Lutske has asked Plaintiff to provide training for new hires working in the Financial Services Team, to do weekly check-ins with them, and to create Performance Plans for staff.

86. In or about July 2024, Plaintiff sat on an interview panel with Bernie Tse and Debra Lutske to hire his replacement employee, demonstrating that Defendant continued to rely on Plaintiff's expertise and treat him as an integral part of the management team.

87. Defendant exercises the same level of control and direction over Plaintiff's work as a contractor as it did when he was an employee. Defendant determines Plaintiff's assignments, deadlines, deliverables, and work processes.

88. Plaintiff's contract has been continuously extended and he remains employed as a contractor as of the filing of this Complaint.

89. The only material differences between Plaintiff's employment and contractor status are: (a) as a contractor, Plaintiff does not receive employee benefits, including health insurance, pension contributions, paid sick leave (80 hours per year), paid vacation, paid holidays (40 hours of floating holidays per year), or job security.

90. This contractor rehire demonstrates that Defendant's claims of "undue hardship" were pretextual. If allowing Plaintiff to work remotely created no hardship as a contractor, it could not have created an undue hardship as an employee.

91. The contractor arrangement reveals Defendant's true motive: to punish Plaintiff for his religious beliefs while continuing to benefit from his work, and to evade its legal obligations under FEHA by stripping him of employee status and protections.

**DEFENDANT'S PATTERN OF DISCRIMINATION**

92. Defendant's discrimination against Plaintiff was not an isolated incident but part of a systematic policy and practice of religious discrimination.

93. On information and belief, approximately 1,000 City employees requested religious exemptions from the vaccination mandate.

94. On information and belief, Defendant granted only 28 religious exemptions out of approximately 1,000 requests.

95. On information and belief, of the 28 employees granted religious exemptions, Defendant did not accommodate a single employee.

96. Defendant applied a blanket policy prohibiting any accommodation of religious exemptions, regardless of individual circumstances, job duties, feasibility of remote work, or other factors.

97. On information and belief, Defendant's refusal to accommodate religious beliefs stands in stark contrast to accommodations provided for other reasons, including allowing numerous employees to work remotely during and after the pandemic for non-religious reasons.

98. Throughout this process, Defendant failed to engage in any meaningful interactive process to determine whether Plaintiff's sincerely held religious beliefs could be reasonably accommodated. Despite Plaintiff's eight years of exemplary service, successful remote work history, and good faith efforts to propose multiple accommodation options, Defendant made no attempt to find a workable solution.

## DAMAGES AND ONGOING HARM

99. As a result of Defendant's discriminatory and retaliatory conduct, Plaintiff suffered significant economic damages including lost wages and benefits from April 2, 2022, through August 2022, and continuing loss of employee status, benefits, and protections.

100. As a contractor rather than an employee, Plaintiff has lost and continues to lose health insurance, pension contributions, paid sick leave (80 hours per year), paid vacation time, paid holidays (40 hours of floating holidays per year), job security, and other benefits of employment.

101. Plaintiff also suffered severe emotional distress, humiliation, and mental anguish as a result of being wrongfully terminated after eight years of dedicated service for refusing to violate his sincerely held religious beliefs.

102. Plaintiff and his family were forced to leave their home in San Francisco and relocate to Ohio because they could no longer afford to live in California after losing their City employment.

## FIRST CAUSE OF ACTION
**Religious Discrimination**
**(Cal. Gov. Code § 12940(a))**

122. Plaintiff incorporates by reference, repeats, and realleges all preceding and subsequent paragraphs as though fully set forth herein.

123. Under California law, it is unlawful for an employer "to refuse to hire or employ a person ... or to bar or to discharge a person from employment ... or to discriminate against a person

in compensation or in terms, conditions, or privileges of employment" because of religion. (Cal. Gov. Code § 12940(a)).

124. Religious creed is defined broadly to include all aspects of religious belief, observance, and practice. (Cal. Gov. Code § 12926(q)).

125. Plaintiff is a member of a protected class because of his sincerely held religious beliefs as a Christian Scientist, which prohibit him from receiving COVID-19 vaccines.

126. Plaintiff was qualified for his position and was performing his duties competently, as evidenced by his eight years of dedicated service to Defendant and consistently positive performance reviews and also by his subsequent rehire as a contractor to perform the same duties, albeit at greater expense to Defendant.

127. Plaintiff suffered adverse employment actions when his transfer to a position that would have resulted in a promotion was blocked and when Defendant terminated his employment on April 1, 2022.

128. Plaintiff's sincerely held religious belief was a substantial motivating reason for Defendant's decision to terminate his employment. But for Plaintiff's religious beliefs and his refusal to violate those beliefs by receiving the COVID-19 vaccine, Defendant would not have blocked his transfer – he had accepted an offer – nor would Defendant have terminated his employment.

129. As a direct and proximate result of Defendant's discriminatory actions in violation of FEHA, Plaintiff has suffered and continues to suffer significant economic damages, including but not limited to lost wages, lost benefits, loss of employee status and protections, as well as non-economic damages in the form of severe emotional distress, all in an amount to be proven at trial.

130. Plaintiff is entitled to recover reasonable attorney fees and costs. (See Code Civ. Proc. § 1021; Gov. Code § 12965, subd. (b)).

**<u>SECOND CAUSE OF ACTION</u>**
**Retaliation**
**(Cal. Gov. Code §§ 12940(h) and 12940(l)(4))**

133. Plaintiff incorporates by reference, repeats, and realleges all preceding and subsequent paragraphs as though fully set forth herein.

134. Under California law, it is an unlawful employment practice for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (Cal. Gov. Code § 12940(h)).

135. FEHA further recognizes that requesting religious accommodation is protected against retaliation, stating that it is unlawful: "(4) For an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted." (Cal. Gov. Code § 12940(l)(4)).

136. Plaintiff engaged in protected activity under FEHA when, on or about September 16, 2021, he requested a reasonable accommodation for his sincerely held religious beliefs, thereby opposing Defendant's employment requirement that he violate his faith by receiving a COVID-19 vaccine.

137. Plaintiff also engaged in protected activity when he informed Defendant that its denial of accommodations violated his rights under FEHA.

138. Defendant subjected Plaintiff to a series of escalating adverse employment actions in retaliation for his protected activity. These actions materially and adversely affected the terms, conditions, and privileges of his employment.

139. The adverse employment actions taken against Plaintiff include, but are not limited to:

a. On October 31, 2021, denying his request for reasonable accommodation despite granting his religious exemption;

b. In December 2021, blocking his transfer to a promotive position at OCA where officials

had agreed to accommodate him;

c. On March 1, 2022, placing Plaintiff on unpaid administrative leave and barring him from performing his job duties;

d. On March 21, 2022, initiating dismissal proceedings against Plaintiff; and

e. On April 1, 2022, terminating Plaintiff's employment of eight years.

140. Defendant's adverse employment actions were directly and causally linked to Plaintiff's protected activity. Plaintiff's request for religious accommodation was a substantial motivating reason for Defendant's decision to deny the accommodation, block his transfer to OCA, place him on unpaid leave, initiate dismissal proceedings, and ultimately terminate his employment.

141. The causal link between Plaintiff's protected activity and Defendant's retaliatory conduct is evidenced by the temporal proximity of the events and by DHR's explicit statements that "the City is taking a hard line" and "the City will not accommodate" religious exemptions.

142. On information and belief, Plaintiff's request for religious accommodation triggered DHR's intervention to block his transfer to OCA, despite OCA's willingness to accommodate him, demonstrating that Defendant retaliated against Plaintiff for exercising his legally protected right to religious accommodation.

143. Defendant retaliated against Plaintiff because he sought to exercise his legally protected right to religious accommodation. But for Plaintiff's protected activity, Defendant would not have subjected him to these adverse employment actions.

144. Defendant's subsequent rehire of Plaintiff as a contractor rather than reinstating him as an employee constitutes ongoing retaliation. Defendant continues to punish Plaintiff for his religious beliefs by denying him employee status, benefits, and protections while simultaneously benefiting from his work.

145. As a direct and proximate result of Defendant's retaliatory actions in violation of FEHA, Plaintiff has suffered and continues to suffer significant economic damages, including but not

limited to lost wages, lost benefits, loss of employee status and protections, as well as non-economic damages in the form of severe emotional distress, all in an amount to be proven at trial.

146. Plaintiff is entitled to recover reasonable attorney fees and costs. (See Code Civ. Proc. § 1021; Gov. Code § 12965, subd. (b)).

**THIRD CAUSE OF ACTION**

**Failure to Accommodate Religious Beliefs**

**(Cal. Gov. Code § 12940(l))**

104. Plaintiff incorporates by reference, repeats, and realleges all preceding and subsequent paragraphs as though fully set forth herein.

105. Under California law, it is unlawful for an employer to discriminate against or discharge a person from employment "because of a conflict between the person's religious belief or observance and any employment requirement." (Cal. Gov. Code § 12940(l)(1)).

106. Protected religious belief or observance includes "all aspects of religious belief, observance, and practice." (Cal. Gov. Code § 12926(q)).

107. An employer is required to "[explore] any available reasonable alternative means of accommodating the religious belief and observance, including the possibilities of excusing the person from those duties that conflict with the person's religious belief or observance or permitting those duties to be performed at another time or by another person..." (Cal. Gov. Code § 12940(l)(1)).

108. On or about September 16, 2021, Plaintiff submitted a formal request for religious accommodation, informing Defendant of his sincerely held Christian Science beliefs that prohibited him from receiving any COVID-19 vaccine. This created a direct conflict with Defendant's vaccine mandate, an employment requirement.

109. Defendant acknowledged the sincerity of Plaintiff's religious beliefs by granting his religious exemption request on October 31, 2021.

110. Despite acknowledging Plaintiff's sincere religious beliefs, Defendant failed and refused to provide Plaintiff any reasonable accommodation for those beliefs. Instead, Defendant denied Plaintiff's request to continue working remotely—a simple, feasible accommodation—and offered no alternative, thereby failing in its affirmative duty under FEHA.

111. The accommodations Plaintiff requested were eminently reasonable and would not have imposed an undue hardship on Defendant. Plaintiff had successfully performed his job while working remotely full-time since February 2020, demonstrating that remote work was feasible and effective.

112. Defendant failed to explore any reasonable alternative means of accommodation. Despite Plaintiff's willingness to mask, test regularly, work in isolated office space, or take any other safety measures, Defendant refused to consider any alternative to vaccination, summarily rejecting Plaintiff's requests without a good faith effort to find a workable solution.

**Plaintiff's Accommodation Would Not Have Imposed an Undue Hardship on Defendant**

113. Defendant's claim that accommodating Plaintiff would create an undue hardship is directly contradicted by Defendant's own subsequent conduct.

114. In or around August 2022, just four months after terminating Plaintiff, Defendant rehired Plaintiff as an independent contractor to perform the exact same Senior Administrative Analyst duties remotely.

115. Plaintiff has worked remotely as a contractor from Ohio continuously from August 2022 through the present day, performing identical job functions with no safety concerns, operational difficulties, or hardship to Defendant.

116. If allowing Plaintiff to work remotely created no hardship as a contractor, it could not have created an undue hardship as an employee. The only difference is that as a contractor, Plaintiff receives no employee benefits and Defendant avoids its FEHA obligations.

117. Defendant's rehire of Plaintiff as a contractor demonstrates that:

a. Remote work was entirely feasible for Plaintiff's position;

b. Plaintiff's continued remote work created no safety risk to others;

c. Defendant's claimed "undue hardship" was pretextual; and

d. Defendant's true motive was to discriminate against Plaintiff because of his religion and to evade FEHA's accommodation requirements.

118. On information and belief, Defendant failed to engage in any meaningful analysis of what hardships might result from accommodating Plaintiff, especially given that Plaintiff was already working remotely successfully and could have continued doing so.

119. As a direct and proximate result of Defendant's failure to provide Plaintiff a reasonable accommodation as required by law, Defendant terminated Plaintiff's employment on April 1, 2022.

120. Defendant's failure to accommodate Plaintiff's sincerely held religious beliefs constitutes a violation of California Government Code § 12940(l). As a direct result of this violation, Plaintiff has suffered and continues to suffer significant economic damages, severe emotional distress, and the loss of his eight-year career with the City, in an amount to be proven at trial.

121. Plaintiff is entitled to recover reasonable attorney fees and costs. (See Code Civ. Proc. § 1021; Gov. Code § 12965, subd. (b)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric J. Thrasher respectfully prays for judgment against Defendant City and County of San Francisco, and for the following relief:

1. For a declaration that the acts and practices of Defendant complained of herein are in violation of the California Fair Employment and Housing Act, Government Code § 12940, et seq.;

2. For an order reinstating Plaintiff to his former position as Senior Administrative Analyst or a comparable position with the City and County of San Francisco with full employee status, benefits, and protections;
3. For an award of damages for all past and future economic losses, in an amount according to proof at trial;
4. For an award of compensatory damages for non-economic losses, including mental anguish, humiliation, embarrassment, and severe emotional distress, in an amount according to proof;
5. For an award of reasonable attorney's fees as provided by California Government Code § 12965(b);
6. For an award of all costs of suit incurred herein;
7. For an award of prejudgment interest on all damages awarded at the maximum legal rate; and
8. For such other and further relief as the Court may deem just and proper.

Dated: January 28, 2026

CHURCH STATE COUNCIL

By: *s/ Alan J Reinach*________________
Alan J Reinach
Jonathon Cherne
Attorneys for Plaintiff Eric Thrasher